**STATE of Tennessee, Appellee,**

**v.**

**Walter Patrick DOOLEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 22, 2000.

---

Brandt Davis, Knoxville, TN, for appellee.

Paul G. Summers, Attorney General & Reporter, Marvin S. Blair, Jr ., Assistant Attorney General, Nashville, TN; Randall E. Nichols, District Attorney General, Robert Jolley, Assistant District Attorney, Knoxville, TN, for appellant.

## OPINION

JERRY L. SMITH, Judge.

A Knox County jury convicted the appellant, Walter Patrick Dooley, of one (1) count of second degree murder. The trial court sentenced him as a Repeat Violent Offender to life imprisonment without parole. On appeal, the appellant presents the following issues for this Court's review:

(1) whether the evidence is sufficient to support the jury's finding of guilt;

(2) whether the trial court erred in limiting the appellant's questioning of witnesses regarding the victim's violent disposition and his involvement with illegal gangs;

(3) whether the trial court erred in allowing state witness, Sabrina Jackson, to give lay opinion testimony;

(4) whether the trial court erred in refusing to allow defense counsel to rehabilitate defense witness, Charles Prater, on redirect examination;

(5) whether the trial court erred in denying the appellant's motion to restrict the cross-examination of defense witness, James Smith;

(6) whether the trial court erred in limiting the appellant's closing argument regarding defense witness, Charles Prater;

(7) whether the trial court erred in sentencing the appellant as a Repeat Violent Offender; and

(8) whether the trial court erred in ruling that the state could impeach the appellant with his prior convictions.

After a thorough review of the record before this Court, we conclude that the use of a prior murder conviction, more than ten (10) years old, to impeach the credibility of the appellant constitutes reversible error and that this case must be reversed and remanded for a new trial.

### FACTS

On the night of February 4, 1997, Sabrina Jackson was standing outside J & L Wings, a restaurant in Knoxville, when she noticed a car drive into the parking lot. Two men got out of the car, and Jackson recognized one of the men as Charles "Pimp" Prater. She identified the other man at trial as the appellant. The appellant walked inside the restaurant, then emerged shortly thereafter with the victim, Antonio Bailey. Jackson saw the appellant draw a handgun, and Bailey outstretched his arms "like he was begging for his life." Seeking assistance for this obviously perilous situation, Jackson began to walk inside the restaurant; however, before she could get inside, she heard gunshots.

Jackson testified at trial that she was unable to hear the conversation between the two men and did not observe the victim doing anything to provoke the appellant. However, although it was raining and dark outside, there was enough light to see that the victim did not have anything in his hands during the shooting. Jackson left the scene prior to the police arriving.

Bailey sustained three (3) gunshot wounds to the right arm, chest and abdomen. He subsequently died as a result of his injuries.

Shortly after the incident, the appellant and Prater were apprehended in Anderson County. A loaded .22 caliber revolver was found in the appellant's vehicle, and the appellant had 46 unfired .22 caliber shells in his front pocket. Steve Scott, a TBI Crime Lab firearms examiner, compared the live cartridges found in the appellant's pocket with the bullets taken from the victim's body and found them to be consistent. Although Scott noted similar characteristics between the bullets taken from Bailey's body and the revolver found in the appellant's vehicle, he could not conclusively determine that the bullets were fired from the appellant's weapon.

Charles Prater testified that when he and the appellant arrived at J & L Wings on the night of February 4, the appellant went inside the restaurant, and he remained outside. Several minutes later, the victim shoved the appellant out of the door, and the appellant fell to the ground. Prater testified that the victim was wearing "gang clothes", i.e., a red shirt and jeans. The appellant attempted to stand up, but the victim pushed him down again. When the appellant began to stand up for the second time, the victim reached for a "shiny object" which Prater believed to be a gun. The appellant then reached for his own gun and shot the victim.

The appellant testified on his own behalf at trial. He stated that, on the night of the incident, he and Prater went to J & L Wings to see a friend, Dion Robinson. When he walked inside the restaurant, Bailey, who was clad in red, approached him and accused him of "violatin'." The appellant was dressed in a Miami Dolphins sweatshirt which, according to the appellant, could have resembled the same color blue worn by rival gang members. Bailey then pushed him towards the door, and the appellant stumbled out of the door. He tried to regain his footing, but Bailey pushed him down again. The appellant testified that, as he was attempting to stand up, Bailey drew a gun. When Bailey "went to pull the slide," the appellant shot

him with his own gun. The appellant testified that he believed that Bailey would kill him, so he fired his gun in self-defense. Because he was afraid that Bailey's fellow gang members would retaliate against them, he and Prater fled the scene.

The jury found the appellant guilty of the indicted offense of second degree murder. The trial court sentenced the appellant as a Repeat Violent Offender to life imprisonment without parole. From his conviction and sentence, the appellant now brings this appeal.

### SUFFICIENCY OF THE EVIDENCE

As his first issue, the appellant challenges the sufficiency of the convicting evidence. He claims that the state's case was based solely upon Sabrina Jackson's testimony. He argues that Jackson's testimony was incredible and confused, and the defense proof directly refuted her testimony. Thus, he asserts that the evidence is legally insufficient to sustain his conviction. In a related argument, he also contends that the trial court erred in denying his motion for judgment of acquittal at the conclusion of the state's case.

#### A.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R.App.P. 13(e); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn.1992). On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence.

*State v. Morgan,* 929 S.W.2d 380, 383 (Tenn.Crim.App.1996); *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim.App.1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." *State v. Matthews,* 805 S.W.2d at 779.

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn.1994); *State v. Harris,* 839 S.W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. *Id.*

### B.

Second degree murder is defined at Tennessee Code Annotated section 39–13–210(a)(1) as a "knowing killing of another." Sabrina Jackson's testimony, as accredited by the jury, is clearly sufficient to support the verdict of guilt. All inconsistencies in her testimony and questions concerning her credibility were resolved in favor of the state, and we are not free to reassess the jury's findings. *State v. Tuttle,* 914 S.W.2d 926, 932 (Tenn.Crim.App.1995). In addition, the question of whether the killing of the victim was in self-defense is a question for the jury. *State v. Goode,* 956 S.W.2d 521, 527 (Tenn.Crim.App.1997). The jury rejected the defense in this case, and we see no reason to second-guess that decision.

This issue is without merit.

### C.

The appellant further argues that the trial court erred in denying his motion

for judgment of acquittal at the conclusion of the state's case-in-chief. He asserts that the state failed to produce any evidence of "calmness or dispassion" or of "any planning, intent, reflection or choice of action" by the appellant. Therefore, he claims that the jury should not have been allowed to deliberate on the offense of second degree murder.

The appellant was indicted on the offense of second degree murder. In order to carry its burden, the state must present evidence that the appellant committed a "knowing killing of another." Tenn.Code Ann. § 39–13–210(a)(1). Contrary to the appellant's assertion, the state is not required to prove calmness, dispassion, planning, intent or reflection by the appellant to establish second degree murder. The state is merely required to prove that the appellant knowingly killed the victim. The evidence is legally sufficient to sustain the appellant's conviction for second degree murder; thus, the trial court did not err in denying the appellant's motion for judgment of acquittal under Tenn.R.Crim.P. 29.[1] *See State v. Campbell,* 904 S.W.2d 608, 611 (Tenn.Crim.App.1995).

This issue has no merit.

### *TRIAL COURT'S LIMITATION OF DEFENSE QUESTIONING*

The appellant contends that the trial court improperly limited defense counsel's questioning of state and defense witnesses with regard to various issues relevant to the appellant's theory of self-defense at trial. Specifically, he alleges that the trial court limited questioning regarding: (1) the existence of gangs in Knoxville and their respective colors; (2) the victim's reputation for violence; (3) the victim's propensity to carry a weapon; (4) the victim's alleged membership in a gang in Knoxville; and (5) the reasons why Knoxville police officer Joseph Huckleby stopped the victim on prior occasions.

---

1. We also note that this issue could be considered waived because the appellant offered evidence in his own defense. *State v. Campbell, 904 S.W.2d 608, 611 (Tenn.Crim.App.1995).*

The appellant argues that, by limiting examination on these issues, the trial court forced the appellant to testify on his own behalf at trial.

 Although not raised by the parties, this Court observes that the appellant failed to include many of these allegations in his motion for new trial. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error ... unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R.App.P. 3(e). Therefore, the appellant's allegations regarding the trial court's limitation of questioning on the existence of gangs in Knoxville and their respective colors, the victim's reputation for violence, the victim's propensity to carry a weapon and the victim's alleged membership in an illicit gang in Knoxville have been waived. Tenn.R.App.P. 3(e); *State v. Clinton,* 754 S.W.2d 100, 103 (Tenn.Crim.App.1988).

 The only remaining issue is whether the trial court improperly limited the appellant's cross-examination of Knoxville police officer Joseph Huckleby regarding prior vehicle stops involving the victim. During cross-examination, Officer Huckleby testified that he was familiar with the victim because the victim "was in several cars that [he had] had to initiate traffic stops on." When defense counsel attempted to question Officer Huckleby regarding the reasons for these traffic stops, the trial court ruled that the reasons for the traffic stops were irrelevant and, *sua sponte,* stopped such questioning.

In order to be admissible at trial, evidence must be relevant and probative to an issue at trial. *State v. McCary,* 922 S.W.2d 511, 515 (Tenn.1996). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R.Evid. 401. Furthermore, relevant evidence may be excluded at trial if the pro-

bative value of that evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, ..." Tenn.R.Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Williamson,* 919 S.W.2d 69, 78–79 (Tenn.Crim. App.1995); *State v. Forbes,* 918 S.W.2d 431, 449 (Tenn.Crim.App.1995).

The trial court determined that the reasons for the prior traffic stops were irrelevant to the issues at trial. We agree. The questioning was not relevant to the issue of self-defense and served no purpose other than to disparage the character of the victim. Moreover, on redirect, the state questioned the witness regarding the basis for the stops, to which Officer Huckleby responded, "I've stopped and talked to him in—in certain areas for no obvious—I mean no criminal activity or criminal reason at all." Thus, the appellant was not prejudiced by the trial court's limitation of questioning in this regard.

 We further conclude that the trial court did not err in terminating the questioning *sua sponte.* By doing so, the trial court attempted to prevent the needless presentation of evidence which was irrelevant and misleading. The propriety, scope, manner, and control of examination of witnesses are matters within the trial court's sound discretion. *State v. Harris,* 839 S.W.2d at 72. We believe that the trial court acted within its discretion in this instance.

This issue has no merit.

### LAY OPINION TESTIMONY— SABRINA JACKSON

 In his next issue, the appellant claims that state witness, Sabrina Jackson, characterized the victim's actions prior to his death as "like he was begging for his life." He asserts that this testimony constituted inadmissible lay opinion testimony

under Tenn.R.Evid. 701; thus, he argues that the trial court erred in admitting such testimony.

During the state's direct examination of Sabrina Jackson, the following exchange occurred:

Q Who pulled out a gun? Mr. Dooley?

A Yes. I seen [sic] Tony was down like, like he was begging for his life or—

Q Okay. Now, tell us about that. You say Tony is down, begging for his life, when he makes a motion—

MR. DAVIS Your Honor, object to that. I'll object to that, as to what the deceased may have said at this time, unless there's proper foundation laid for it.

THE COURT Well, I think she testified to that. If she didn't, develop it the best you can.

Q Tell us—tell us exactly what happened and what you saw. Go through what you saw Tony do.

A I guess at the time Tony was begging for his life, because he was—

MR. DAVIS Your Honor—

A—against the wall like this.

MR. DAVIS—objection as to what Tony may have said.

THE COURT She didn't say that.

MR. DAVIS I think she—

THE COURT She said Tony was begging for his life.

MR. DAVIS Well, that's—she's—she's trying—

MR. JOLLEY Your Honor, that's an appropriate characterization, and she's just—we're going to have her describe it, if—

THE COURT Well, I'll overrule the objection.

Q Go ahead, ma'am. Just tell us what happened.

A As I said, I guess at the time—I guess Tony was begging for his life, because he was doing like this, doing like this. So—

Q Where—you were putting your hands in front of you.

A He was on the wall, doing like this.

Q His hands were out—

A Yeah.

Q —like that?

A Yeah, like he was begging—

■■■ This Court notes that defense counsel did not object to Jackson's testimony as being improper lay opinion testimony. A reading of the foregoing clearly indicates that counsel's objection was on hearsay grounds. It is well-settled that an appellant cannot change grounds for objections from the trial court to the appellate court. *State v. Brewer*, 932 S.W.2d 1, 9 (Tenn.Crim.App.1996); *State v. Matthews*, 805 S.W.2d at 781; *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn.Crim.App.1988). Such action constitutes waiver of the issue.

■■■ In any event, we will briefly address the appellant's issue on its merits. Under Tenn.R.Evid. 701(a), a lay witness may testify in the form of an opinion or inference only when the opinion or inference is:

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

A lay witness is allowed to testify as to his or her opinion "[i]n situations where a witness 'cannot readily and with equal accuracy and adequacy' testify without an opinion." Tenn.R.Evid. 701, Advisory Commission Comments.

We believe that Jackson's testimony was properly admitted as lay opinion testimony under Tenn.R.Evid. 701(a). First, Jackson's characterization of the victim's actions prior to his death was rationally based on Jackson's perception of the victim. Secondly, Jackson had obvious difficulties in describing the victim's actions prior to the shooting. Therefore, the inference that the victim was "begging for his life" was helpful to a clear understand-

ing of her testimony. The trial court did not err in allowing Jackson to so testify.

This issue has no merit.

### REHABILITATION OF CHARLES PRATER

 The appellant alleges that the trial court erred in refusing to allow defense counsel to rehabilitate defense witness, Charles Prater, on redirect examination. He claims that the prosecutor extensively attacked Prater's character for truthfulness on cross and re-cross examination. As a result, he claims that he should have been allowed to further question Prater with regard to his credibility.

During cross-examination, the state questioned Prater regarding his prior statement to the police wherein he denied seeing the shooting. This statement directly contradicted Prater's in-court testimony where Prater described the shooting in detail. On redirect, Prater stated that his testimony at trial was truthful, and the state again questioned his credibility on re-cross examination. At the conclusion of re-cross examination, the trial court did not allow any more questioning by defense counsel.

As pointed out by the state, the appellant was afforded an adequate opportunity to rehabilitate his witness on redirect after Prater's credibility was attacked by the state. Both parties extensively questioned Prater regarding the events of the night of February 4 and regarding Prater's credibility. The court merely terminated the questioning when it became repetitious. "The admissibility of testimony and other evidence, as well as the scope of redirect examination, is within the discretion of the trial court, whose ruling will not be reversed absent an abuse of that discretion." *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn.Crim.App.1999). The trial court did not abuse its discretion in calling a halt to defense counsel's repetitious questioning of Prater.

This issue is without merit.

### CROSS–EXAMINATION OF JAMES SMITH

The appellant alleges that the trial court erred in denying his motion to restrict the state's cross-examination of James Smith, a proposed defense witness who had an unrelated second degree murder charge pending. He maintains that the trial court failed to conduct a proper hearing to determine whether the pending murder charge was probative to the issue of Smith's credibility under Tenn.R.Evid. 608(b). As a result of the trial court's actions, the appellant claims that Smith believed he might incriminate himself and, therefore, refused to testify on the appellant's behalf.

The appellant prepared to call James Smith to testify on his behalf at trial. Prior to Smith testifying, the appellant requested that the trial court preclude the state from questioning Smith regarding an unrelated pending second degree murder charge. When the trial court questioned Smith's attorney whether Smith would testify, counsel indicated his desire to invoke his client's rights under the Fifth Amendment "out of an abundance of caution." A discussion ensued, and Assistant District Attorney Robert Jolley expressed his disinclination to question Smith regarding the indicted offense; however, if during Smith's testimony the pending charge became probative of Smith's credibility, Jolley indicated that he might attempt to question Smith regarding the pending charge. Jolley noted that until Smith testified, his testimony would be speculative, and a hearing under Tenn.R.Evid. 608(b) would not be prudent until Smith took the stand.

After reflecting on the applicable law, the trial court ruled that the state could not question Smith about his pending charge unless it was shown to be probative of Smith's credibility. Smith's attorney responded, "Well, your Honor, I—you know, out of an abundance of caution, I can't—I can't let him take the stand."

Upon further discussion, Smith personally invoked his right to remain silent and refused to take the stand on the appellant's behalf.

The appellant argues that the trial court denied his motion to restrict the scope of the state's cross-examination of Smith. Our reading of the record indicates to the contrary. The trial court stated that it would not allow questioning with regard to the pending charge unless it was probative on the issue of truthfulness or untruthfulness. The court indicated its willingness to conduct a hearing to determine the probative value of specific instances of conduct on the issue of credibility should Smith choose to testify. *See* Tenn.R.Evid. 608(b).[2] However, Smith chose not to testify at all after his attorney advised him against testifying.

■ Although under subpoena by the appellant, after Smith refused to testify entirely, the appellant made no request of the trial court to rule on whether Smith should be compelled to take the stand and claim the Fifth Amendment privilege on a question by question basis. This question by question determination of whether the witness may claim a Fifth Amendment privilege is the appropriate procedure to resolve the problem of a witness who is reluctant to testify because of potentially incriminating answers to questions asked on cross-examination. A trial witness other than the accused in a criminal prosecution may not claim a blanket Fifth Amendment immunity from giving relevant testimony simply because certain questions which may be asked on cross-examination might elicit incriminating answers. The witness should be required to answer those questions seeking to elicit relevant non-incriminating information in the witness' possession. If the witness is asked for incriminating information on cross-examination he may claim the Fifth Amendment privilege at that time. In-

deed, this the rationale behind that portion of Tenn.R.Evid. 608(b)(3) which provides in pertinent part:

> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

This portion of Rule 608(b)(3) is designed to avoid the very situation which occurred in the instant case by permitting a witness to testify on direct examination and then claim the Fifth Amendment privilege when asked on cross-examination about potentially incriminating misconduct. N. Cohen, S. Sheppeard & D. Paine, *Tennessee Law of Evidence* § 608.10 (3rd ed.1995).

■ It is the responsibility of the proponent of the witness, in this case the appellant, to ensure that the correct procedure is utilized in securing the witness' testimony. His failure to do so in this case deprives him of relief with respect to this issue. Tenn.R.App.P. 36(a).

### *CLOSING ARGUMENT*

■ In his next issue, the appellant maintains that the trial court erred in restricting defense counsel's closing argument. He asserts that counsel should have been allowed to argue that defense witness, Charles Prater, testified in court pursuant to a duly served subpoena. He claims that this argument was proper to rebut the state's argument that Prater testified for the defense as a result of his long-standing friendship with the appellant.

During the appellant's closing argument, defense counsel stated the following to the jury:

> Charles Prater didn't want to come to court. But Charles Prater was here because of service of a witness subpoena on him. And he knew if he didn't come

---

2. Although the appellant characterizes this issue as the failure to conduct a proper Rule 608 hearing, it appears that the appellant was

asking the trial court to preclude any cross-examination on this issue, whether it was relevant or not.

to court, he'd be held in contempt and he'd be put in jail by Judge Jenkins for not coming to court. I served that subpoena.

The state objected to counsel's argument on the grounds that it was unsupported by evidence in the record. The trial court sustained the objection.

■ Trial courts are given broad discretion in determining the propriety of closing argument. *Coker v. State*, 911 S.W.2d 357, 368 (Tenn.Crim.App.1995). "[C]losing argument is a valuable privilege for both the [s]tate and the defense", and counsel is afforded wide latitude in presenting closing argument to the jury. *State v. Cribbs*, 967 S.W.2d 773, 783 (Tenn. 1998). "Argument must be temperate, *predicated on evidence introduced during the trial,* relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn.1999)(emphasis added).

The appellant claims that the trial court should have allowed defense counsel to argue that Prater was present in court pursuant to a duly served subpoena. He argues that the subpoena was filed with the trial court; therefore, counsel's argument was supported by evidence in the record. However, the subpoena was filed with the trial court during a bench conference at the conclusion of the proof. Thus, the subpoena was not introduced as "evidence" during trial, and counsel improperly referred to the subpoena during closing argument.

■ On the other hand, the state's argument that Prater testified because of his friendship with the appellant was entirely proper. Prater testified that he and the appellant had been friends for approximately 25 years. When the prosecutor asked, "[y]ou're here trying to help out a friend; aren't you Mr. Prater?", Prater responded, "[y]es, sir." The trial court did not abuse its discretion in controlling closing arguments. *See State v. Payton*, 782 S.W.2d 490, 496 (Tenn.Crim.App.1989).

This issue is without merit.

### REPEAT VIOLENT OFFENDER

■ In his final issue, the appellant maintains that the trial court erred in sentencing him as a Repeat Violent Offender to life without parole under Tenn.Code Ann. § 40–35–120. He argues that Tenn. Code Ann. § 40–35–120 requires that the trial be held within 180 days of arraignment. He insists that because he was not tried within 180 days as required by the statute, the trial court lost jurisdiction to sentence him under the statute.

The appellant was arraigned on April 21, 1997, and a trial date was set for July 21, 1997. On July 15, 1997, defense counsel filed a motion to continue the trial date on the grounds that counsel was not prepared for trial. At the hearing on the motion, the assistant district attorney indicated that the state was prepared to try the case. Nevertheless, the trial court granted the continuance, and the trial commenced in March of the next year.

Tenn.Code Ann. § 40–35–120(g) provides that the trial court, upon finding that a defendant is a repeat violent offender, shall sentence him to life imprisonment without the possibility of parole. The appellant qualifies as a repeat violent offender in that he was convicted of second degree murder and had a prior conviction for the same offense. *See* Tenn.Code Ann. § 40–35–120(a)(3), (c)(1). The statute provides that "[a] charge as a repeat violent offender shall be tried within one hundred eighty (180) days of the arraignment ... unless the delay is caused by: (A) the defendant ..." Tenn.Code Ann. § 40–35–120(i)(1). The statute further authorizes the granting of a continuance "for good cause shown." *Id.*

It is apparent that the delay in this case, if not "caused" by the appellant, is certainly attributable to the appellant. The state was prepared to try the case within the

requisite 180 days, but defense counsel requested a continuance. The statute permits a continuance "for good cause shown", and we believe that unpreparedness of counsel sufficiently qualifies as "good cause" to justify a continuance. The trial court properly sentenced the appellant as a Repeat Violent Offender to life imprisonment without the possibility of parole under Tenn.Code Ann. § 40–35–120.

This issue has no merit.

### PRIOR CONVICTIONS FOR IMPEACHMENT

The appellant contends that the trial court erred in allowing the state to impeach him regarding his prior convictions for second degree murder and attempted possession of cocaine with the intent to sell. He claims that both convictions were more than (10) years old and that the prejudicial impact of admitting these convictions substantially outweighed their probative value on the issue of credibility. Thus, he alleges that these convictions were inadmissible under Tenn.R.Evid. 609.

Prior to trial, the state gave notice that it intended to impeach the appellant with three (3) prior convictions, if he chose to testify at trial. The state sought to cross-examine the appellant with regard to a 1978 conviction for second degree murder, a 1985 conviction for passing a forged instrument,[3] and a 1994 conviction for attempt to possess cocaine with the intent to sell. The trial court held a hearing prior to the appellant testifying to determine the admissibility of the prior convictions. The court determined that the probative value of the prior convictions outweighed any prejudicial impact and, therefore, allowed the state to impeach the appellant with these prior convictions.

Tenn.R.Evid. 609(a) provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime

may be admitted if the following procedures and conditions are satisfied:

> (1) The witness must be asked about the conviction on cross-examination....
>
> (2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.
>
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused....

Generally, stale convictions, i.e., more than ten (10) years old, are inadmissible under Tenn.R.Evid. 609; however, evidence of a stale conviction may be admissible if:

> the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence and the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect.

Tenn.R.Evid. 609(b)(emphasis added).

In balancing the probative value versus the prejudicial impact of a prior conviction "a trial court should (a) 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction' and (b) 'analyze the relevance the impeaching conviction has to the issue of credibility.'" *State v. Farmer*, 841 S.W.2d 837, 839 (Tenn.Crim.App.1992)

---

**3.** The appellant does not contest the use of this conviction to impeach his testimony.

(quoting N. Cohen, D. Paine, and S. Sheppeard, *Tennessee Law of Evidence*, § 609.9 at p. 288 (2nd ed.1990)). A trial court's determination under Rule 609 will not be reversed by this Court unless it appears from the record that the trial court abused its discretion. *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn.Crim.App.1996).

In this case, the appellant's prior convictions were punishable by imprisonment in excess of one year, and the trial court properly held a hearing to determine whether the probative value of the convictions outweighed their prejudicial effect. *See* Tenn.R.Evid. 609(a)(2) and (3). Thus, the remaining issue for this Court is whether the trial court correctly determined that the prejudicial impact of the prior convictions was outweighed by their probative value on the issue of credibility.

■ The trial court determined that the appellant's conviction for attempt to possess cocaine with the intent to sell was properly admissible under Tenn.R.Evid. 609. We agree. Contrary to the appellant's assertion, he was convicted of this offense in 1994; as a result, his conviction for attempted possession of cocaine with the intent to sell was not stale under Tenn. R.Evid. 609(b).

The admission of a prior felony drug conviction as probative to the issue of an accused's credibility has been upheld by this Court. *See State v. Tune*, 872 S.W.2d 922, 927 (Tenn.Crim.App.1993). Moreover, the conviction for attempted possession of cocaine with the intent to sell is dissimilar to the offense for which the appellant was on trial. Thus, there is little potential that the jury would infer a propensity to commit the crime of second degree murder. *See State v. Blanton*, 926 S.W.2d at 960. The trial court did not

abuse its discretion in finding that the appellant's conviction for attempt to possess cocaine with the intent to sell was more probative on the issue of credibility than prejudicial.

■ With regard to the appellant's prior conviction for second degree murder, however, the trial court erred in allowing the use of that conviction to impeach the appellant. The appellant was convicted of second degree murder in 1978; accordingly, this conviction is stale and may only be admitted upon a finding that its probative value as to credibility substantially outweighed any prejudice. Tenn.R.Evid. 609(b).[4] Panels of this Court have disagreed as to the probative value of violent felonies on the issue of credibility. *See State v. Blanton*, 926 S.W.2d at 960 ("this court has held that 'felonies of a violent nature reflect on the moral character of a witness'; and, therefore, 'this evidence is not usually without probative value.'"); *but see State v. Farmer*, 841 S.W.2d at 840 ("[t]he probative value of a conviction for attempting to commit voluntary manslaughter to impeach the testimony of an accused is slight or nonexistent."). However, the prejudicial impact of admitting evidence of a prior conviction for the same offense for which the appellant was on trial is considerable. The similarity of the two offenses might improperly suggest a propensity on the appellant's part to commit the offense for which he is on trial. *See State v. Roberts*, 703 S.W.2d 146, 147 (Tenn.1986); *State v. Farmer*, 841 S.W.2d at 839–40. Because we cannot conclude that the probative value of the appellant's prior conviction for second degree murder substantially outweighed the prejudicial effect of admitting the conviction, we must conclude that the trial court abused its

---

**4.** Although the record is somewhat unclear on this point, it appears that in 1978 the appellant received a ten (10) year prison sentence for this prior murder. This Court assumes that in view of various sentencing credits, etc., the appellant did not serve the entire ten (10) years of incarceration. This is significant only because the staleness of a conviction for

impeachment purposes is measured from the date of release from confinement to the commencement of the trial. *See* N. Cohen., S. Sheppeard & D. Paine, *Tennessee Law of Evidence* § 609.5 (3rd ed.1995). In any event, the state does not contest the appellant's allegation that the 1978 murder conviction is stale.

discretion in allowing the state to impeach the appellant with this conviction.

■ Furthermore, it appears that this error requires reversal of the appellant's conviction and a new trial. The prosecution's case largely rested upon the testimony of Sabrina Jackson. The appellant contradicted Jackson claiming self-defense. Thus, the case became largely a "swearing contest" between the appellant and Jackson. Although the evidence against the appellant is sufficient to support the verdict, it is not so overwhelming or so convincing that we can say with any assurance that introduction of evidence of the appellant's prior conviction for murder did not influence the jury's finding of guilt. We, therefore, hold that this case must be reversed and remanded for a new trial conducted without the use of the appellant's prior conviction for murder as impeaching evidence should he testify.

## CONCLUSION

After reviewing the record before this Court, we conclude that the trial court committed reversible error by allowing the state to impeach the appellant with a prior second degree murder conviction. As a result, the judgment of the trial court is reversed, and this case is remanded for a new trial.

WADE, P.J., and WITT, J., concur.