# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 10, 2012

## STATE OF TENNESSEE v. KOMOYANGI KOMOYANGI

**Appeal from the Criminal Court for Shelby County**
**No. 10-06326     W. Mark Ward, Judge**

---

**No. W2011-01860-CCA-R3-CD  - Filed June 19, 2012**

---

A Shelby County jury convicted the Defendant-Appellant, Komoyangi Komoyangi, of assault, a Class A misdemeanor, and he was sentenced to serve eleven months and twenty-nine days in confinement.  The sole issue presented for our review is whether the evidence was sufficient to support the conviction given Komoyangi's theory of self-defense.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Constance Barnes (at trial), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Komoyangi Komoyangi.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Robert Ratton, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.**  Komoyangi was indicted for aggravated assault following his May 29, 2010 attack on the victim in this case, Franco Levi.  The victim testified at trial, held March 29 and 30, 2011, that he immigrated to the United States from Sudan.  He had known Komoyangi, who was also from Sudan, since approximately 2003.  At around 3:00 a.m. on May 29, 2010, the victim was working at a gas station when he saw Komoyangi arrive driving a car that belonged to an acquaintance of the victim.  The victim testified that Komoyangi was drunk at the time and did not have a driver's license.  The victim confronted Komoyangi, and out

of a concern that the police would stop Komoyangi, the victim called the car's owner. As the victim retrieved his phone to do so, Komoyangi drove away. The car's owner later found Komoyangi and took the car keys.

At around 6:00 p.m. on the same date, the victim went to Komoyangi's apartment to meet Emmanuel, a friend who was going to give the victim a ride to work at the gas station. When the victim arrived at Komoyangi's apartment, Komoyangi and Emmanuel were outside eating. The two finished their meal a while later, and Komoyangi went inside the apartment without having spoken to the victim. Komoyangi locked the door behind himself.

The victim and Emmanuel soon realized that Emmanuel's car keys were inside the apartment, and they knocked on the front door. Failing to summon Komoyangi at the front door, the victim walked to Komoyangi's back door and began knocking there. After the victim and Emmanuel knocked for a total of ten to fifteen minutes, Komoyangi answered the back door and immediately struck the victim on the head with a wooden table leg. The victim stepped back and asked Komoyangi why he hit the victim. Komoyangi replied, "You [sic] trying to ruin my life," in apparent reference to the morning's events at the gas station. Komoyangi then walked toward the victim and tapped the table leg in a menacing manner. The victim began moving away. Komoyangi followed and threw the table leg at the victim. The victim dodged and went around the corner of the building, where he drew the attention of a security guard. Meanwhile, Komoyangi had retrieved the table leg and pursued the victim. The security guard intervened, handcuffed Komoyangi, and called the police and an ambulance.

The victim testified that he was injured when Komoyangi struck him on the head, and he displayed the resulting scar for the jury. The paramedics who arrived were able to treat the victim's wound at the scene.

On cross-examination, the victim testified that Komoyangi did not act as though he was angry with the victim when the victim arrived at the apartment. He and Emmanuel did not "pound" on Komoyangi's doors but rather knocked "like regular folks knock." According to the victim, neither he nor Emmanuel knocked on the windows of the apartment. The victim acknowledged that he had been convicted of a felony for driving under the influence.[1]

---

[1]The victim had apparently been convicted of driving under the influence a sufficient number of times that one of the convictions was a felony. See T.C.A. § 55-10-403(a)(1)(A)(vi) (2006) (defining a fourth or subsequent conviction as a Class E felony). The jury was made aware only of the felony conviction.

Thomas Jones, a security guard at the apartment complex, testified that at the time of these events, he saw the victim coming toward him. The victim said that Komoyangi had just attacked him, and Jones noticed blood on the right shoulder area of the victim's shirt. Komoyangi then emerged from around the corner of a building carrying a table leg as though he was preparing to strike the victim. Jones placed himself between the victim and Komoyangi and asked Komoyangi to drop the table leg several times. Komoyangi did so only once Jones began to draw his mace. Jones handcuffed Komoyangi and took him to the security office. He then called the police and an ambulance to treat the victim. Jones asked Komoyangi what had happened, and Komoyangi said that he hit the victim because the victim had been knocking on the front and back doors. Komoyangi did not say that he was scared of the victim.

Officer Andrew Kosso with the Memphis Police Department testified that he responded to the apartment complex on the date in question. When Officer Kosso arrived, he saw the victim sitting on a step outside the apartment security office. The victim had a cloth on his head and was bleeding from the top part of his head. Officer Kosso entered the office and found Komoyangi in handcuffs. Komoyangi told Officer Kosso that the victim had been knocking on his door, which made Komoyangi "a little irritated." Komoyangi then opened the door and struck the victim. Komoyangi never told Officer Kosso that he was scared of the victim or that the victim had a weapon. On cross-examination, Officer Kosso testified that Komoyangi was calm and quiet when they spoke.

Sergeant Joseph Benya of the Memphis Police Department testified that he was the lead investigator assigned to this case. He testified that he took a statement from Komoyangi, a transcript of which was read into the record and admitted as an exhibit at trial. The statement was in question and answer format and provided, in pertinent part, as follows:

Q: Do you know Franco Levi?
A: Yes, he was live [sic] with me.

Q: Was he at your apartment at 2943 Mimosa today?
A: Yes

Q: Did you hit him on the head with a wooden table leg?
A: Yes

Q: Why?
A: Because, the way I can't handle it he was knocking on the door real hard and I did not even know why. He was knocking real loud.

-3-

Q: When you went to the door did you know it was Levi?
A: I was in the window, and someone kept knocking on the back door and the front door.

Q: Did you know it was Levi?
A: No.

Q: So you were going to hit whoever was at the door?
A: Not like that

Q: Levi armed with a weapon?
A: No

Q: So when you open the door and saw it was Levi you knew who you were going to hit with the stick?
A: When I open the door and I saw the blue shirt and he was just going to step in and he stepped down. I asked why you are knocking that way I stepped out and hit him with the stick. He just ran away.

Q: You knew it was Levi you hit?
A: Yes

Q: Were you stopped by security still armed with the stick?
A: Yes

Q: Why did you still have the stick?
A: Because I though[t] he was going to get something.

Sergeant Benya testified that Komoyangi never said that he was acting in self-defense or that the victim was threatening him.

Komoyangi testified that he had been in the United States for approximately four years after immigrating from South Sudan and that his native language was Arabic. The victim was related to Komoyangi's family, but Komoyangi was not sure of the exact relationship. On the date in question, Komoyangi was not angry with the victim. Early that morning, around 3:00 a.m., he walked with a friend to the store where the victim worked to buy some food. He and the victim did not have an argument.

Later that day, Komoyangi and Emmanuel were inside Komoyangi's apartment. When Emmanuel left, Komoyangi locked the door and lay down to go to sleep. Knocking

at the front door woke him. He described the knocking as so forceful that it was "almost breaking [the] door." Komoyangi saw the front door knob turn as though the person was trying to enter. After the knocking continued for approximately five minutes, he heard knocking at a bathroom window. Komoyangi went to the bathroom window, but he saw no one. He then heard knocking at the front and back doors at the same time. After ten to fifteen minutes of knocking, Komoyangi went to the back door, where his family kept the wooden table leg. Because the knocking was "too much for [Komoyangi]" and it made him mad, he picked up the table leg. When he opened the back door, he saw someone walking away from the door. He hit the person with the table leg. As the victim was walking away, Komoyangi recognized him. He denied chasing the victim, and he testified that he walked out the front door still holding the table leg.

Komoyangi testified that he was scared at the time. He explained that someone had recently broken a window in his apartment and that he lived in Binghamton, what he described as "not a good area." He did not call the police because he did not have a phone. He testified that he used the table leg to defend himself and that he hit the victim because he was angry. He said he had "never see[n] somebody knock on [his] door like this."

On cross-examination, Komoyangi testified that he had known the victim for approximately three years. He acknowledged that he recognized the victim when he saw the victim and that he spoke to the victim before striking him. He was angry when he opened the door because the knocking was bothering him. Komoyangi testified that he did not "know the difference between bother and somebody fixing to attack." He further testified that he struck the victim by throwing the table leg as the victim was running away.

Following the proof at trial, the jury convicted Komoyangi of misdemeanor assault, a lesser included offense of aggravated assault. This timely appeal followed.

**Analysis.** Komoyangi argues the evidence is insufficient to support a verdict of guilt beyond a reasonable doubt on the conviction of assault. Although he concedes that he struck the victim, he asserts that "the State . . . failed to negate his theory of self-defense." The State responds that the evidence was sufficient to support the jury's guilty verdict and that the jury properly rejected the claim of self-defense. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S.

307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The Tennessee Supreme Court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

A person commits assault, as relevant here, by either (1) intentionally, knowingly, or recklessly causing bodily injury to another or (2) intentionally or knowingly causing another to reasonably fear imminent bodily injury. T.C.A. § 39-13-101(a) (2010). "Bodily injury" is defined to include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Id. § 39-11-106(a)(2).

Komoyangi argues that he struck the victim in self-defense. Tennessee Code Annotated section 39-11-611(b)(1) states:

> [A] person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.

Id. § 39-11-611(b)(1). Acts committed in self-defense are justified, and self-defense is a complete defense to crimes of violence. See id. § 39-11-601; State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993).

The jury, as the trier of fact, determines whether the defendant acted in self-defense. State v. Dooley, 29 S.W.3d 542, 547 (Tenn. Crim. App. 2000) (citing State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997)). "[I]n the context of judicial review of the jury verdict, in order to prevail, the defendant must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994). The State has the burden of negating the defendant's claim of self-defense in the event that "admissible evidence is introduced supporting the defense." T.C.A. § 39-11-201(a)(3); see State v. Sims, 45 S.W.3d 1, 10 (Tenn. 2001).

We conclude that the evidence, considered in the light most favorable to the State, was sufficient to support the jury's verdict of guilty for assault. The evidence demonstrated that Komoyangi struck the victim with a wooden table leg, causing a bleeding head wound. Although Komoyangi testified that he attacked the victim out of self-defense and because he was scared, he also said he did so because he was angry and the victim's knocking bothered him. The jury heard Komoyangi's testimony as well as the testimony of the other witnesses at trial and, as was its prerogative, rejected Komoyangi's self-defense claim. As previously stated, this court does not reweigh or reevaluate the proof presented at trial. Henley, 960 S.W.2d at 578-79. Accordingly, we conclude that a rational juror could find that Komoyangi committed assault beyond a reasonable doubt. Komoyangi is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE