IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016

## STATE OF TENNESSEE v. KEVIN PATTON BENFIELD

**Appeal from the Circuit Court for Henderson County**
**No. 140762      Donald H. Allen, Judge**

_____

**No. W2015-00532-CCA-R3-CD  -  Filed May 3, 2016**

_____

The Defendant, Kevin Patton Benfield, was convicted by a Henderson County jury of one count of aggravated assault and received an effective sentence of six years' confinement. On appeal, the sole issue presented for our review is whether the evidence is sufficient to support his conviction. Upon our review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

George Morton, District Public Defender; and Hewitt Chatman, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Kevin Patton Benfield.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from an altercation that occurred on February 21, 2014, between the Defendant, his friend, Kerry Brittain, and the victim, Terry Crider, who was Brittain's[1] neighbor at the time. The victim became upset after he was bitten by Brittain's dog, which was described at trial as an "eighty-pound pit bull." The victim confronted Brittain about the dog, at which point the Defendant intervened and, after an argument, struck the victim in the head multiple times, causing severe facial injuries.

---

[1] We acknowledge that we do not use titles when referring to every witness. We intend no disrespect in doing so. Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended. He would prefer that every adult witness be referred to as Mr. or Mrs. or by his or her proper title.

The Defendant was subsequently indicted for aggravated assault.

At trial, the victim testified that he owned several rental properties in the Defendant's neighborhood at the time of the assault. The victim had received several complaints from tenants regarding Brittain's dog, which was allowed to roam freely in the neighborhood. The victim had discussed the dog with Brittain on several occasions and, although Brittain promised to keep the dog fenced in, he consistently failed to do so.

On February 21, 2014, the victim was removing garbage from one of his rental properties when he was bitten by Brittain's dog. When he confronted Brittain, the two began to argue and the Defendant involved himself in the altercation, eventually striking the victim in the head with a brick. As a result of the blow, the victim suffered multiple facial fractures and was airlifted to Vanderbilt University Hospital where he underwent emergency surgery. The victim later underwent two additional surgeries. His eyesight and hearing were damaged as a result of the assault, and he testified that he continues to have trouble speaking and eating.

The victim admitted to having a knife on him on the day of the attack, and stated that during the altercation with the Defendant and Brittain he kept his hand on the knife in his pocket because of the dog. However, he claimed that he never threatened the Defendant or Brittain with the knife and never removed it from his pocket during the altercation. On cross-examination, the victim clarified that he did have the knife out immediately after being bitten by the dog, but that he put it back in his pocket before approaching Brittain and the Defendant.

Kerry Brittain, testifying for the defense, recalled the incident differently. Brittain testified that he, the Defendant, and some relatives were at his home when the Defendant's sister alerted him that the dog had bitten the victim. Upon going outside, Brittain recalled that the victim was "already irate" and was screaming and cursing that he was tired of the dog and was going to kill it. When the Defendant intervened, the victim pulled a knife out of his pocket and grabbed him by the arm, at which point the Defendant "just leveled him." Once the victim was on the ground, the Defendant hit him an additional three or four times before Brittain pulled him off the victim. Brittain testified that he then took the knife, which the victim was still holding, until the police arrived. Brittain claimed that the victim had been the aggressor in the altercation and that he had antagonized and provoked the Defendant, who only hit the victim after the victim grabbed him. Brittain also stated that the Defendant only struck the victim with his fist, and that he never saw him pick up or strike the victim with a brick or any other weapon.

On cross-examination, Brittain admitted that he initially told the arresting officers that the victim kept the knife behind his back during the altercation and never threatened

him or the Defendant with it. He further clarified that the Defendant stepped off the porch and walked over to confront the victim and that the victim never stepped toward the Defendant.

The Defendant testified and admitted that he initially approached the victim. However, he claimed that he struck the victim after he had been threatened and grabbed by the arm.

> I did go over there. But my intentions – I didn't have no intentions to fight or nothing, you know. I've known [the victim] about fifteen years. You know, I was going over there to talk to him, you know, we're all grown men . . . he just snapped, you know, he started threatening me and stuff . . . He reached in his pocket, pulled out a knife. And when I backed up . . . he reached out and grabbed me. I didn't have [any] choice but to try to keep this man from cutting me. I was scared to death.

On cross-examination, the Defendant admitted that he inserted himself into the confrontation between the victim and Brittain. The Defendant also admitted that there were bricks near where the altercation took place but denied striking the victim with one.

Faith Comer, the Defendant's girlfriend, witnessed part of the incident and observed the victim "screaming at the top of his lungs about how the dog had hurt him and that he was going to shoot the dog[.]" She testified that the victim then pulled a knife and threatened to cut the Defendant, at which point the Defendant struck the victim in the head. Once the victim was on the ground, Brittain picked up the knife and held it until the police arrived.

On cross-examination, Comer admitted that she and the Defendant were dating at the time of the incident and living together at the time of the trial. She did not mention that Brittain took a knife off the victim or that the victim was the initial aggressor in her statement to police.

Officer Collins Bailey, an employee of the Henderson County Sheriff's Department at the time of the incident, testified that he was the first officer on the scene. He obtained statements from the Defendant and Brittain and collected a knife, purportedly taken from the victim while he was on the ground, from Brittain. None of the witnesses reported that the victim was hit with a brick, but there were bricks in the general area. Investigator David Dowdy arrived shortly after Officer Bailey and observed several lacerations on the Defendant's knuckles and hands. He took an additional statement from the Defendant and several photographs of the scene, which were introduced into evidence. Investigator Dowdy testified that based on the totality of

his investigation, he arrested the Defendant for aggravated assault.

Following deliberations, the jury convicted the Defendant of aggravated assault. On March 2, 2015, the trial court sentenced the Defendant to six years' confinement, and on March 16, 2015, denied Benfield's motion for a new trial. The Defendant filed a timely notice of appeal on March 20, 2015.

## ANALYSIS

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction for aggravated assault. Specifically, he asserts that the evidence established that he acted in self-defense and that the State failed to negate this defense. The State responds that the evidence is sufficient to sustain his conviction. We agree with the State.

When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury, as the trier of fact, must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be

drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

Aggravated assault, as relevant here, occurs when a person intentionally or knowingly commits an assault as defined in Tennessee Code Annotated section 39-13-101(a)(1) and the assault results in serious bodily injury or involves the use of a deadly weapon. T.C.A. § 39-13-102(a)(1)(A)(i), (iii). Serious bodily injury refers to a bodily injury that involves a substantial risk of death, protracted unconsciousness, extreme physical pain, or involves the impairment of a function of a bodily member, organ or mental faculty. Id. § 39-11-106(a)(34). Deadly weapon means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury" or "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury[.]" Id. § 39-11-106(a)(5).

In challenging the sufficiency of the evidence in the instant case, the Defendant does not contest any particular element of aggravated assault. Rather, he asserts that the State failed to disprove beyond a reasonable doubt that he acted in self-defense.

Self-defense is defined as follows:

[A] person who is not engaged in illegal activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

(A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

(B) The danger creating the belief of imminent death or serious bodily injury is real or honestly believed to be real at the time; and

(C) The belief of danger is founded upon reasonable grounds.

Id. § 39-11-611(b)(2). The jury, as the trier of fact, determines whether a defendant acted in self-defense. State v. Dooley, 29 S.W.3d 542, 547 (Tenn. Crim. App. 2000) (citing State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997)). "[I]n the context of judicial review of the jury verdict, in order to prevail, the defendant must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." State v. Clifton, 880 S.W.2d 737,

743 (Tenn. Crim. App. 1994). The State has the burden of negating a defendant's claim of self-defense in the event that "admissible evidence is introduced supporting the defense." T.C.A. § 39-11-201(a)(3); State v. Sims, 45 S.W.3d 1, 10 (Tenn. 2001) (citing State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996)).

Viewed in the light most favorable to the State, the evidence in the instant case established that the Defendant involved himself in an altercation between the victim and Brittain. During the altercation, the Defendant left Brittain's porch, approached the victim, and struck him in the head with a brick. By his own admission, once the victim was on the ground, the Defendant struck him an additional three or four times. As a result of the incident, the victim suffered multiple facial fractures, requiring three surgical procedures. Although the defense offered conflicting testimony and asserted that the Defendant only struck the victim in self-defense, the jury evaluated the credibility of the witnesses and resolved all conflicts in the evidence in favor of the State's theory. See Campbell, 245 S.W.3d at 335; State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). The trial court charged the jury on the issue of self-defense and the jury chose to reject this defense, as was its prerogative. See Goode, 956 S.W.2d at 527 (citing State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)). We will not reweigh this evidence or second-guess the jury's decision on appeal. Based upon the evidence presented, a rational jury could find the Defendant guilty of aggravated assault. He is not entitled to relief.

## CONCLUSION

Based on the foregoing authority and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE